UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALFREDO LUGO,

                    Petitioner,

   -vs-

DAVID M. UNGER, Superintendent,
Wyoming Correctional Facility, et al.,

                    Respondents.

**DECISION AND ORDER**
No. 08-CV-6363T

_____

## I. Introduction

*Pro se* Petitioner Alfredo Lugo ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody. Petitioner challenges the denial of discretionary release by the Parole Board of the New York State Division of Parole ("Division of Parole"), on March 12, 2008, after his seventh appearance interview.

Petitioner is in state custody as a result of a judgment of conviction entered January 6, 1982, in New York State Supreme Court, New York County. By that judgment, Petitioner was convicted, after a jury trial, of Murder in the Second Degree (New York Penal Law ("Penal Law") § 125.25), and was sentenced to an indeterminate term of imprisonment of fifteen years to life.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

**II. Factual Background and Procedural History**

    **A. Statement of the Case Challenging the Conviction**

On the night of May 25, 1981, near the corner of 104th Street and Park Avenue in New York County, Petitioner approached a sixty-year old man, brandished a pistol and demanded money. Petitioner then shot the man in the right cheek and fled the scene without taking any money. The victim died of the gunshot wound. Petitioner voluntarily surrendered on June 1, 1981 and was placed under arrest.

By New York County Indictment No. 2963/81, Petitioner was charged with second-degree murder. See Inmate Status Report for Parole and Board Appearance, 2 (Resp't Ex. A); Sentencing Mins. [S.M.] 7-8 (Resp't Ex. B). Petitioner proceeded to trial before Judge Stanley L. Sklar, and was found guilty as charged. On January 6, 1982, Petitioner was sentenced to an indeterminate term of fifteen years to life imprisonment. See S.M. 7-8 (Resp't Ex. B). He did not appeal his conviction in the Appellate Division.

    **B. Petitioner's Parole Board Proceedings**

On March 12, 2008, Petitioner made his seventh appearance before the Parole Board of the Division of Parole. See Parole Board Tr. of 03/12/08 (Resp't Ex. C). The Parole Board reviewed Petitioner's crime, stating that it was "not clear" whether Petitioner fired the gun intentionally or accidentally, resulting

in the victim's death.  Id. at 2-3.  Petitioner claimed that he never pointed the weapon at the victim, and that he fired the gun accidentally as the result of a "sudden movement."  Id. at 3. Petitioner further claimed that the victim was known to be involved in organized crime as a numbers runner, and therefore was the source of "easy money."  Id. at 4.  When the Parole Board asked Petitioner how he felt about his crime, Petitioner stated that it was a "terrible, stupid" act, "something I have to live with the rest of my life," and which he thinks about often.  Id. at 8-9.

The Parole Board reviewed Petitioner's prior crimes, which consisted mainly of trespasses and petit larcenies, and characterized Petitioner as a "petty thief" before he committed the underlying crime.  Id. at 3.  The Parole Board also reviewed Petitioner's prison record and noted that he had been a disciplinary problem and prone to violence until 1999, which the Parole Board attributed to his drug problem.  Id. at 6.  Since 1999, however, Petitioner had participated in a number of educational and vocational programs, worked in the law library, and had not refused to participate in any prison program during the previous two years.  Id. at 4.  Petitioner's main behavioral infraction since 1999 involved an incident wherein he grabbed something out of the hands of a corrections officer and then walked away from an assigned area, without permission.  Id. at 4-5.  The Parole Board further noted that the forty-seven year old Petitioner

planned to live with his mother in New York County and to work from home from his brother's Georgia-based company. Id. at 6-7.

The Parole Board denied parole, finding that Petitioner's release would be "incompatible with the welfare and safety of the community." Id. at 11. The Parole Board's "paramount concern" in denying parole was "the extreme violence associated with this terrible crime." Id. Although the panel indicated that it had considered Petitioner's record of program completion and "any satisfactory behavior," these considerations were secondary. Id.

**C. Administrative Appeal of the Denial of Parole**

On March 28, 2008, Petitioner timely filed a *pro se* administrative appeal of the Parole Board's decision with the Appeals Unit of the Division of Parole. See Pet'r Administrative Appeal (Resp't Ex. D). Petitioner's administrative appeal asserted two claims. First, the Parole Board acted in an arbitrary and capricious manner when it denied parole because Petitioner met the statutory requirements for release (set forth in 9 N.Y.C.R.R. § 8002.3(b)(1)-(3)[1]) in connection with his institutional record,

---

[1] 9 N.Y.C.R.R. 8002.3(b)(1)-(3) provides as follows:

(b) Cases where the guidelines have previously been applied. In those cases where the guidelines have previously been applied, the board shall consider the following in making the parole release decision. Release shall be granted unless one or more of the following is unsatisfactory:

(1) the institutional record, including program goals and accomplishments, academic achievements, vocational education training or work assignments, therapy and interpersonal relationships with staff and inmates;

(2) performance, if any, as a participant in a temporary release program; or

the absence of evidence that the shooting was intentional, his release plan, and the fact that he had no prior felony convictions. Id. at 7-8, 10. Second, the Parole Board violated his right to equal protection when it denied his parole application while granting parole to approximately 215 other second-degree murderers in 2007. Id. at 11-13. The Parole Board's Appeals Unit did not respond to Petitioner's appeal.[2]

C. **The Habeas Corpus Petition**

On or about August 20, 2008, Petitioner filed the instant habeas corpus petition, wherein he seeks relief on the following grounds: (1) the Parole Board's decision was arbitrary and capricious; and (2) the Parole Board violated his right to equal protection. See Pet. ¶ 16, Grounds One-Two (Dkt. #1); Pet'r Mem. of Law [Mem.] (Dkt. #9).

D. **Petitioner's Article 78 Petition**

On September 12, 2008, while the habeas corpus petition was pending, Petitioner commenced an Article 78 proceeding against the

---

(3) release plans, including community resources, employment, education and training and support services available to the inmate.

[2] For purposes of this habeas corpus proceeding, Petitioner was not prejudiced by the failure of the Parole Board's Appeals Unit to oppose or respond to his administrative appeal. Further, the Appeals Unit's failure to respond does not invalidate the Parole Board's administrative decision or render it constitutionally defective. Rather, Petitioner may deem his administrative remedy to be exhausted and then seek judicial review of the underlying determination by commencing an Article 78 proceeding under 9 N.Y.C.R.R. § 8006.4(c), which he did. See D'Joy v. N.Y.S. Div. of Parole, 127 F.Supp.2d 433, 422 (S.D.N.Y. 2001); Graham v. N.Y.S. Div. of Parole, 269 A.D.2d 628 (3d Dep't. 2000) (citing Lord v. State of N.Y. Executive Dept. Bd./Div. of Parole, 263 A.D.2d 945 (4th Dep't. 1999)

Division of Parole in Albany County Court. See Pet'r Verified Petition, Index No. 8096-08, dated 09/12/08 (Ex. E). Petitioner raised the same two claims he raised in his administrative appeal and attached his administrative appellate brief in support of these claims. Id. Petitioner moved for an order vacating the Parole Board's decision and directing that he be released to parole supervision or, alternatively, that the Parole Board conduct a de novo hearing. Id.

On January 23, 2009, the Division of Parole filed its opposition to Petitioner's Article 78 motion. The Division of Parole argued, in relevant part, that the Article 78 proceeding should be dismissed because: it was precluded by and duplicative of the instant federal habeas corpus proceeding, which raised the same claims; and because Petitioner failed to state a cause of action. See Division of Parole Opposition dated 01/23/09 (Resp't Ex. F). On February 12, 2009, the Albany County Court granted Respondent's motion and dismissed Petitioner's Article 78 proceeding. See Decision and Order of the Albany County Court (Hon. Patrick J. McGrath), Index No. 8096-08, dated 02/12/09.[3] Petitioner did not subsequently appeal the decision of the Albany County Court.

**III. General Principles Applicable to Habeas Review**

---

[3] Because this Decision and Order was filed after the commencement of the instant habeas corpus proceeding, it is not included as part of the original record.

**A.   The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).  The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified

the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.  Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

The doctrine of exhaustion applies to habeas petitions challenging parole denial and revocations. See Cook v. N.Y. State Div. of Parole, 321 F.3d 274, 279-80 (2d Cir. 2003).

To exhaust a denial of parole claim under New York law, an inmate must first file an administrative appeal with the Division of Parole's Appeals Unit.  If that appeal is denied, the inmate must seek relief in state court pursuant to Article 78. See Scales v. N.Y. State Div. of Parole, 396 F.Supp.2d 423, 428 (S.D.N.Y. Oct. 19, 2005); accord Pena v. Ellis, 07 CV 2736, 2007 U.S. Dist. LEXIS 93957, *8-9 (E.D.N.Y. Dec. 19, 2007).  If, as in this case, the Parole Board's Appeals Unit does not oppose or respond to the appeal within four months after it is perfected, Petitioner may

deem his administrative remedy to be exhausted and then seek relief under Article 78. See 9 N.Y.C.R.R. § 8006.4(c); D'Joy, 127 F.Supp.2d at 442; Graham, 269 A.D.2d 628. If the Article 78 Petition is denied, the petitioner must appeal that denial to the highest state court reviewing it. See Cotto v. Herbert, 331 F.3d 217, 237 (2d Cir. 2003).

In this case, Petitioner concedes that his claims are unexhausted, but contends that the appeal process for a denial of parole is ineffective because he will be eligible for a new hearing before he has exhausted his appeal -- thus his appeal will be moot. See Mem., 3. He also contends that the state remedy is ineffective because the only remedy available to him is yet another hearing before the Parole Board, which has, thus far, resulted in summary denial of his claims. See Pet. ¶ 11. Petitioner's argument is nearly identical to the argument raised in several recent habeas cases. In each of these cases, the district court dismissed the due process and equal protection claims on substantive grounds and declined to rule on the procedural question of state exhaustion. See Brown v. Thomas, 02 Civ. 9257 (GEL), 2003 U.S. Dist. LEXIS 3396 (S.D.N.Y. Mar. 10, 2003); Defino v. Thomas, 02 Civ. 7413 (RWS), 2003 U.S. Dist. LEXIS 4299 (S.D.N.Y. Mar. 24, 2003); Hairston v. Thomas, 02 Civ. 9301 (NRB), 2003 U.S. Dist. LEXIS 5020 (S.D.N.Y. Mar. 31, 2003); Manley v. Thomas, 255 F. Supp. 2d 263 (S.D.N.Y. April 2, 2003).

Similarly, this Court declines to rule on Petitioner's exhaustion argument because the petition can be dismissed on the lack of merit of both claims.

**IV. Petitioner's Claims**

Petitioner argues, as he did in his administrative appeal and his Article 78 petition, that: (1) the Parole Board's decision was arbitrary and capricious; and (2) that the Parole Board's decision violated his equal protection rights. Pet. ¶ 16, Grounds One-Two; Mem., 5-11.

**A. Petitioner's Claim that the Denial of Parole was Arbitrary and Capricious is "Patently Frivolous"**

First, Petitioner alleges that the Parole Board's refusal to release him to parole supervision was arbitrary and capricious because the Parole Board failed to properly weigh the relevant statutory factors for release and focused excessively on the underlying crime. Pet. ¶ 16, Ground One; Mem., 5-8. The record, however, is clear that the Parole Board fully considered the statutory factors and took note of the positive elements of Petitioner's prison record. Therefore, as discussed in further detail below, the Parole Board's denial of Petitioner's request did not violate his constitutional rights.

It is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). "Decisions of

the Executive Branch do not automatically invoke due process protection; there is no constitutional guarantee that all executive decision making must comply with standards that assure errorfree determinations." Id. at 7, citing Meachum v. Fano, 427 U.S. 215, 225 (1976); Moody v. Daggett, 429 U.S. 78 (1976). "This is especially true with respect to the choices presented by the administrative decision to grant parole release." Greenholtz, 442 U.S. 1 at 7.

Here, Petitioner has not been denied substantive due process, since the Second Circuit has consistently held that "[t]he New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release." Barna v. Travis, 239 F.3d 169, 171 (2d Cir. 2001); see also Marvin v. Goord, 255 F.3d 40, 44 (2d Cir. 2001); Pyle v. Thomas, 02 CIV. 10266 (DLC) (HBP), 2003 U.S. Dist. LEXIS 16877, *4-5 (S.D.N.Y. Sept. 23, 2003). "[T]he Second Circuit has held that prisoners in the New York State system have no liberty interest in parole, and that 'the protections of the Due Process Clause are inapplicable.'" Salahuddin v. Unger, 04 CV 2180 (JG), 2005 U.S. Dist. LEXIS 18865, *12-13 (E.D.N.Y. Nov. 5, 2005) (quoting Barna, 239 F.3d at 171). Petitioner's liberty interest is "limited to not being denied parole for arbitrary or impermissible reasons." Boddie v. N.Y. State Div. of Parole, F.Supp.2d 421, 428 (S.D.N.Y. 2003) (quoting Brown v. Thomas, 02 Civ. 9257 (GEL), 2003 U.S. Dist. LEXIS 3396, *3 (S.D.N.Y. March 10, 2003).

"Denial of parole is neither arbitrary nor capricious when the Parole Board relies on the factors defined by the New York statute." Romer v. Travis, 03 Civ. 1670 (KMW) (AJP), 2003 U.S. Dist. LEXIS 12917, *21 (S.D.N.Y. July 29, 2003) (citing Davis v. Thomas, 256 F.Supp.2d 190, 191 (S.D.N.Y. 2003). Under New York law:

> Discretionary release on parole shall not be granted merely as a reward for good conduct . . . but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for the law. In making the parole release decision, the guidelines . . . shall require that the following be considered: (i) the institutional record including program goals and accomplishments, academic achievements, therapy and interpersonal relationships with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education, and training and support services available to the inmate; . . . and (v) statement made to the board by the crime victim or the victim's representative . . . .

New York Executive Law ("N.Y. Exec. Law") § 259-i(c)(A). Additionally, "the Board 'shall consider' 'the seriousness of the offense' and 'prior criminal records, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.'" N.Y. Exec. Law § 259-i(2)(c)(A), by incorporation of § 259-i(1)(a). "[M]ere eligibility

for parole does not entitle the prisoner to parole." Priore v. Nelson, 626 F.2d 211, 216 (1980). Moreover, "New York law specifically rejects the notion that an inmate is entitled to release based on his exemplary institutional record, commendable participation in rehabilitative and vocational programs and sincere remorse." Brown, 02 Civ. 9257 (GEL), 2003 U.S. Dist. LEXIS 3396, at *3-4.

Petitioner's claim that the Parole Board placed undue emphasis on the seriousness of his crime is unsupported by the record. The Parole Board clearly considered the relevant statutory factors. It addressed Petitioner's satisfactory program participation (N.Y. Exec. Law § 259-1(2)(c)(A)), his release plan and potential future employment (N.Y. Exec. Law § 259-1(2)(c)(A)(iii)), and his criminal history (N.Y. Exec. Law § 259-i(1)(a)). See Parole Board Tr. of 03/12/08 (Resp't Ex. C). Further, the Parole Board properly regarded the severity of the underlying crime of being of "paramount concern." Id. at 11. "A policy that requires the Board to look first and foremost at the severity of the crime . . . is neither arbitrary nor capricious." McLaurin v. Pataki, 07 Civ. 3482 (PAC)(FM), 2008 U.S. Dist. LEXIS 52624, *34-35 (S.D.N.Y. July 10, 2008), (quoting Mathie v. Dennison, 06 Civ. 3184 (GEL), 2007 U.S. Dist. LEXIS 60422, *18). Given the Parole Board's full consideration of the relevant statutory factors and the violent nature of the crime, it was appropriate to find that Petitioner's

release could endanger society, and to deny parole on that basis.

Thus, the Parole Board's decision to deny Petitioner release to parole was not arbitrary and capricious, and did not violate Petitioner's constitutional rights. Accordingly, the claim is denied.

**B. Petitioner's Equal Protection Claim is "Patently Frivolous"**

Next, Petitioner argues that the Parole Board's decision violated his equal protection rights. To support his position, he argues that "approximately 215" other convicted second-degree murderers were paroled in New York State in 2007, and asserts that he was entitled to parole because there was no rational basis for this difference in treatment. Pet. ¶16, Ground Two; Mem., 9-12. Petitioner's claim is meritless.

In <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562 (2000), the Supreme Court held that a successful equal protection claim may be "brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" <u>Id.</u> at 564. In interpreting <u>Olech</u>, the Second Circuit emphasized that a petitioner asserting a "class of one" claim must still show that he was subjected to "irrational and wholly arbitrary acts" and "intentional disparate treatment." <u>Giordano v. City of New York</u>, 274 F.3d 740, 751 (2d Cir. 2001) (quoting <u>Olech</u>, 528 U.S. at 565).

In this case, the Parole Board's decision was not irrationally or illicitly motivated. Petitioner points to a newspaper article from the New York Daily News that states that "215 convicted murderers" were granted parole by the Parole Board in 2007. See Pet. 6; Pet'r Mem. of Law, 14. This newspaper article is insufficient to substantiate Petitioner's claim that the Parole Board's decision violated his equal protection rights. See Hairston, 02 Civ. 9301 (NRB), 2003 U.S. Dist. LEXIS 16093, at *7 (explaining that a habeas petition "should set out substantive facts that will enable the court to see a real possibility of constitutional error.") (citing Aubut v. State of Maine, 431 F.2d 688, 689 (1st Cir. 1970)). Petitioner provides no further details to support his argument "that he was similarly situated to [the paroled convicts] in the nature of their crimes or any other circumstances, or that he experienced irrational and arbitrary acts and intentional disparate treatment compared to them." Renis v. Thomas, 02 Civ. 9256 (DAB) (RLE), 2003 U.S. Dist. LEXIS 18417, *14 (S.D.N.Y. Oct. 15, 2003). Further, the Parole Board considered various aspects and consequences of Petitioner's crime, as well as his criminal history, participation in prison programs, prior drug problem, behavioral record while incarcerated, release plan and employment prospects, and possible future threat to community safety. See Parole Board Tr. of 03/12/08, 2-6, 11 (Resp't Ex. C). Because the Parole Board thoroughly reviewed Petitioner's criminal

history and prison record, "[i]ts denial of parole cannot be characterized as irrational." Pyle, 02 CIV. 10266 (DLC) (HBP), 2003 U.S. Dist. LEXIS 16877, at *7; Brown, 02 Civ. 9257 (GEL), 2003 U.S. Dist. LEXIS 3396, at *6. Petitioner has also failed to demonstrate that the Parole Board intentionally discriminated against him. Since Petitioner fails to demonstrate that the Parole Board's decision was irrational, and because he cannot show that he received intentional disparate treatment, his equal protection claim is denied.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.

Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    September 28, 2009
          Rochester, New York